

# Fourth Court of Appeals
## San Antonio, Texas

**CONCURRING OPINION**

No. 04-24-00653-CV

**IN THE INTEREST OF A.C.P.**, A.I.P., A.M.P., M.J-R.P., AND M.C.S., Children

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01264
Honorable Kimberly Burley, Judge Presiding

Opinion by:     Velia J. Meza, Justice
Concurring Opinion by: Lori Massey Brissette, Justice
Concurring & Dissenting Opinion by: H. Todd McCray, Justice

Sitting:         Lori Massey Brissette, Justice
                 H. Todd McCray, Justice
                 Velia J. Meza, Justice

Delivered and Filed: March 25, 2025

I concur in the judgment because I would arrive at that result by reversing on all grounds for termination without reaching the best interest analysis. The danger presented by this case is not that the Department sought to terminate on flimsy facts. The danger is that the State did not present the evidence it had—treating termination as a foregone conclusion.

Our role, as a reviewing court, is to review the record to determine whether there was sufficient evidence to support the trial court's findings. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). It is not our duty to determine whether abuse or neglect occurred here. It is the State's duty to investigate and prove the grounds for termination, if present. It is the trial court's duty to hold the State to its burden of proof at trial. TEX. FAM. CODE §§ 101.007 (clear and convincing

evidence); 161.001(b)(1)(D) (providing trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child).

It did not do so.

But, of even greater concern is that, had the Department presented at trial the facts set forth in its Affidavit for Emergency Removal, the decision in this case may very well have been different. It would be easy for us to ignore our standard of review and affirm based on information outside of the trial record. In fact, it would feel much better than the decision here, which leaves the children in foster care indefinitely unless Mother makes a significant and material change in her life and her ability to care for these children or voluntarily chooses to relinquish her rights. *See* TEX. FAM. CODE § 156.101. But affirming despite the State's failure to create the necessary record creates a very dangerous precedent—one that would only further enable a system that seems to have become numb to the import of what is at stake.

We must remember that termination of parental rights is the "death penalty" of civil cases. *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) (quoting *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring)); *see, e.g.*, *In re R.J.G.*, 681 S.W.3d 370, 381 (Tex. 2023) (same). As such, the matter before us should serve as a wake-up call—an opportunity for us all to take a collective breath and re-evaluate what we are doing and why. We are being asked to terminate the parental rights of a mother to five children and to do so on a ground that could be used to terminate her rights to any future born child. *See* TEX. FAM. CODE § 161.001(b)(1)(D); *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). We are allowing the State to step into a family's home and tear them apart—something we should, as a community, reserve only for those cases in which it is

proven to be critical to ensuring the safety and well-being of the children. To ensure the State does not overstep, that it reserves termination for those cases demanding it, we must hold the State to the requirement of creating a record that supports its actions. In this case, that calls for a record that includes facts not admitted at trial but which could have easily been the subject of the caseworker's testimony including:

- Mother's extensive CPS history including numerous investigations relating to her drug use and neglect of the children, during which she failed to engage in offered services;

- Mother's extensive criminal history, including two prior incarcerations (totaling more than three years) in addition to a pending motion to revoke probation;

- A.I.P. told the caseworker that Mother told her to not tell anyone "about the weed";

- The children's live-in maternal grandmother tested positive for cocaine and marijuana in the weeks following removal of the children and previously had her own children removed by CPS (Mother and maternal aunt);

- The maternal aunt, someone who would take the children when Mother needed her to, lacked stable housing, was living in a hotel room, and admitted to regular marijuana use;

- A nurse who cared for A.I.P. during her hospital stay stated Mother failed to change A.I.P.—then four years old—allowing her to sit in urine while Mother slept (contrary to the caseworker's trial testimony that Mother's interactions with the children were never inappropriate);

- The "abandoned barbeque restaurant" was nothing more than a shed, with a metal roof and blankets covering holes, and with doors left open day and night posing a risk of animals and intruders; and

- Mother refused to provide the location of the children to the Department when asked (contrary to the caseworker's testimony that Mother was at all times cooperative).

Clearly, the Department found this was an open and shut case and handled it accordingly. And, for the trial court—which was probably familiar with the case and with Mother—the evidence was clear and convincing. But the State must remember a reviewing court is not familiar with what has occurred in the case. We have not met Mother. We do not know her history. With few exceptions, we are limited in our review to what was presented and admitted at trial. *See In re E.C.R.*, 402

S.W.3d 239, 248 (Tex. 2013). And, when that record does not demonstrate grounds for termination, we will act accordingly.


Lori Massey Brissette, Justice